IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Todd Ellis Swanson, ) | |
| ) | Civil Action No. 6:05-3286-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Washington Mutual Bank, FA, as ) | |
| successor in interest to Fleet Mortgage ) | |
| Corp. and Washington Mutual Home ) | |
| Loans, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the plaintiff's motion for temporary or permanent injunction. The plaintiff, who is proceeding *pro se*, filed a complaint on November 28, 2005. In his complaint, the plaintiff alleges that he and the defendant "purported to execute" a mortgage and note, but that the defendant never gave him a signed copy of the purported mortgage, note, and other disclosures. He seeks damages for alleged non-disclosure of his right to cancel, for alleged nondisclosure of certain Truth in Lending disclosures, and for violations of numerous consumer rights (comp. ¶¶ 13-14). The plaintiff also seeks an injunction preventing the defendant from foreclosing against the property (comp. ¶ 24). The defendant is Washington Mutual Bank ("Washington Mutual"), formerly known as Washington Mutual Bank, F.A., the successor in interest to Washington Mutual Home Loans, Inc. and Fleet Mortgage Corp. Also currently pending before this court are motions to dismiss and for sanctions filed by the defendant. The plaintiff has not yet responded to those motions.

According to the defendant, "This case is another in a long line of litigation resulting from the Dorean Group's fraudulent mortgage debt elimination 'scam'" (def. resp.

2, ex. B, C, D, E).  The defendant states that "the Dorean Group charges homeowners thousands of dollars for its services and then files false documents purporting to show that the mortgage loan is cancelled and that there are no outstanding liens upon the property ultimately harming both the homeowner and lender" (def. resp., ex. D at p. 2).  The principles in the Dorean scheme are D. Scott Heineman ("Heineman") and Kurt F. Johnson ("Johnson"), who are the named trustees of the Swanson Family Trust (*id.*).  The Swanson Family Trust holds record title to the subject property in this case and also has assumed the subject mortgage (def. resp., ex. F, Judgment of Foreclosure and Sale, *Washington Mutual v. Swanson, et al*, No. 2004-CP-23-7289, at Findings of Fact ¶ 9).  The plaintiff, formerly a licensed certified public accountant in South Carolina, has participated in suits brought as a consequence of this scheme.  In the order revoking the plaintiff's accounting license, the South Carolina State Board of Accountancy noted that the "main premise of the scheme is that no enforceable debt accrues from a lender that funds a loan through wire transfers rather than through hard cash, this is referred to as the 'vapor money' theory."

In the scheme, Heineman and Johnson would sell a "debt elimination package" to a homeowner and direct the homeowner to continue making mortgage payments until directed to stop.  The homeowner would be directed to sign a power of attorney to Heineman and Johnson, who would then set up a family trust in the homeowner's name and transfer the encumbered property into the trust.  Heineman and Johnson would be named as trustees.  They would then approach the lender with an offer to satisfy the homeowner's indebtedness and would also send the lender a complaint outlining federal laws that had allegedly been violated in the lending process.  Heineman and Johnson would also send the lender a power of attorney, demanding the lender sign and acknowledge that it has given the homeowner "vapor money."  The document would also contain a provision providing that the lender's silence was deemed as consent.  Thus, when the lender failed to respond, Heineman and Johnson would execute the power of

attorney, which they would use to cancel the mortgage. Heineman and Johnson would then take steps to refinance the property with another lender, with the homeowner receiving 25% and Heineman and Johnson receiving the rest (def. resp., ex. C, ¶¶ 2-3). The plaintiff participated by filing over 750 opinion letters in support of the Dorean Group's legal theories. The letters were addressed to the homeowners and were used by the Dorean Group in its efforts to invalidate mortgages on homes in various states (def. resp., ex. C, ¶ 9).

The plaintiff conveyed the subject property to Heineman and Johnson as Trustees of the Swanson Family Trust on or about February 12, 2004. Heineman and Johnson assumed the mortgage (def. resp., ex. F at ¶9). According to the defendant, no mortgage payments have been made since March 1, 2004 (*id.* at ¶13). A purported Satisfaction of Mortgage, later invalidated by the Master-in-Equity as unauthorized and filed in error, was filed on April 7, 2004 (*id.* at ¶8). Washington Mutual initiated foreclosure proceedings on or about October 22, 2004, against the plaintiff, Heineman, and Johnson (def. resp., ex. G Foreclosure Complaint, *Washington Mutual v. Swanson, et al*, No. 2004-CP-23-7289). Heineman and Johnson were named both individually and as trustees of the Swanson Family Trust (*id.*). By order dated September 13, 2005, the Honorable Charles B. Simmons, Master-in-Equity for Greenville County, South Carolina, issued an Order and Judgment of Foreclosure and Sale (def. resp., ex. F).

On or about September 30, 2005, the plaintiff filed for bankruptcy, listing Washington Mutual as his only creditor, thereby staying the foreclosure action (def. resp., ex. H, Voluntary Petition, Case No. 05-111310-jw). The plaintiff failed to file the required schedules and the case was dismissed by order of the Bankruptcy Court dated October 25, 2005 (def. resp., ex. I, Order Dismissing Bankruptcy). The Master-In-Equity then issued an Amended Order, dated November 28, 2005, to update the debt figures. In that Amended Order, he stated that "[t]he remainder of the Master in Equity's [September 13, 2005] Order

and Judgment of Foreclosure will remain in force and effect" (def. resp., ex. J).  The plaintiff's complaint seeking damages and injunctive relief in the instant case followed.

The defendant argues that the plaintiff does not have standing to request injunctive relief because he has no legally recognized interest in the property as the Foreclosure Order found that Heineman and Johnson were the owners and title holders of record regarding the subject property.  The defendant further argues that even if the plaintiff had standing, the Anti-Injunction Act ("the Act") would prohibit the relief sought by the plaintiff as the Act prohibits federal courts from issuing injunctions that interfere with the enforcement of state court judgments.  28 U.S.C. §2283.  *See Hill v. Martin*, 296 U.S. 393, 403 (1935).

Even if the Act does not apply and the plaintiff does have standing, the court should not award even temporary injunctive relief because the relevant factors weigh against it.  In determining whether to grant injunctive relief prior to trial, a court must balance four factors:

> (a)  The plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b)  whether the plaintiff will suffer irreparable injury if the injunction is not issued;
>
> (c)  the injury to the defendant if the injunction is issued; and
>
> (d)  the public interest.

*Scotts Company v. United Industries Corporation*, 315 F.3d 264, 271 (4th Cir. 2002); *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189, 193 (4th Cir. 1977).  The court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction were to be denied; if so, then the court must balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant if the injunction were issued.  *Scotts*, 315 F.3d at 271.

The plaintiff cannot make a showing of irreparable harm. As stated by the Master-in-Equity in the Foreclosure Order, any prevention of foreclosure and sale of the subject properly would result in the unjust enrichment of Heineman and Johnson at the expense of the defendant (def. resp., ex. F, ¶8). Public policy concerns weigh against granting injunctive relief, as doing so would only encourage defaulting borrowers to file complaints such as the one filed by the plaintiff in hopes of forestalling enforcement of the Foreclosure Order. Further, the plaintiff's chance of success on the merits is minimal at best. The defendant has attached opinions from courts rejecting the Dorean Group's theories and those like them (def. resp., ex. B, C, D). The theories appear to have absolutely no basis in law.

Wherefore, based upon the foregoing, it is recommended that the plaintiff's motion for injunctive relief be denied.

> s/William M. Catoe
> United States Magistrate Judge

January 31, 2006

Greenville, South Carolina